UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re                                                                    Chapter 7
   APOSTOLOS MITSOPOULOS and
   ERFOSINI MITSOPOULOS,
                                                 Case No. 14-45637-NHL

                      Debtors.

-------------------------------------------------------x
   RICHARD PU,

            Plaintiff,                                                  Adv. Pro. No. 15-01039-NHL

      - against -

   APOSTOLOS MITSOPOULOS and
   EFROSINI MITSOPOULOS,

            Defendants.
-------------------------------------------------------x

DECISION ON SUMMARY JUDGMENT

Appearances:

| | |
|---|---|
| Richard Pu | Gregory M. Messer Esq. & |
| 120 East 90th Street | Joel A. Gaffney Esq. |
| Suite 10C | Law Offices of Gregory Messer, PLLC |
| New York, NY 10128 | 26 Court Street |
| *Pro Se Plaintiff* | Suite 2400 |
| | Brooklyn, NY 11242 |
| | *Attorneys for Defendants* |

NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Plaintiff Richard Pu ("Pu" or "Plaintiff") moves for summary judgment on his claims in this adversary proceeding, pursuant to § 727(a)(5), § 727(a)(3), and § 727(a)(4) of the Bankruptcy Code, to deny Apostolos Mitsopoulos and Efrosini Mitsopoulos ("Debtors") a discharge in their bankruptcy case, Case No. 14-45637-NHL.[1]

First, Plaintiff seeks to have this Court deny the Debtors a discharge pursuant to § 727(a)(5), on the basis of the Debtors' inability to satisfactorily explain the loss of their principal asset, equity in their home. Because the loss of the Debtors' principal asset has been satisfactorily explained by the mortgage loan and home equity line of credit the Debtors received from JPMorgan Chase Bank ("Chase") in 2007, which they used to pay a debt for which they were liable, and for reasons fully explained in this opinion, Plaintiff's motion for summary judgment on his claim to deny the Debtors a discharge under § 727(a)(5) is denied.

Next, Plaintiff contends that the Debtors' discharge should be denied pursuant to § 727(a)(3), on the basis that the Debtors have failed to produce adequate records from which their financial circumstances can be ascertained. Lastly, Plaintiff argues for denial of the Debtors' discharge pursuant to § 727(a)(4), primarily based on Plaintiff's allegation that Efrosini Mitsopoulos ("Ms. Mitsopoulos") made a false oath within the meaning of § 727(a)(4)(A), when undergoing a Rule 2004 examination in August 2015. Because contested questions of fact with regard to Plaintiff's § 727(a)(3) and § 727(a)(4) claims preclude the

---

[1] All statutory references are to 11 U.S.C. et seq. ("Bankruptcy Code" or "Code") and all references to Rules are to the Federal Rules of Bankruptcy Procedure, unless otherwise noted.
  During the pendency of this case Apostolos Mitsopoulos passed away. However, because "[f]or purposes of eligibility for discharge, Congress intended 'individual' to include a deceased individual 'so that if the debtor dies during the bankruptcy case, he will nevertheless be released from his debts, and his estate will not be liable for them,'" this decision refers to both "Debtors." 6-727 Collier on Bankruptcy ¶ 727.01 (15th ed. 2015) (quoting H.R. Rep. No. 95-595, at 384 (1977)); *see* Rule 1016.

granting of summary judgment, and for reasons fully explained in this opinion, Plaintiff's motion with regard to these claims is denied as well.

## Background

In December 1996, the Debtors' son, George Mitsopoulos ("George" or "Son"), through his corporate entity, Titan Pharmaceuticals and Nutrition, Inc. ("Titan"), entered into a franchise agreement with Medicine Shoppe International, INC. ("Medicine Shoppe"), which allowed Titan to open a branded pharmacy under the name "The Medicine Shoppe," in exchange for paying Medicine Shoppe royalties based on a percentage of the pharmacy's net revenues. Pu Decl. SJ 1-9, ECF No. 12-1; Pu Decl. SJ 9, ECF No. 12-1; Am. Compl. ("Complaint") ¶ 4, ECF No. 3; Answer ¶ 4, ECF No. 8.[2] George guaranteed Titan's obligations, as did the Debtors. Pu Decl. SJ 9, ECF No. 12-1; Complaint ¶ 4, ECF No. 3; Answer ¶ 4, ECF No. 8. In addition, Medicine Shoppe loaned $100,000 to Titan, and the Debtors granted Medicine Shoppe a $100,000 mortgage on their home. Complaint ¶ 4, ECF No. 3; Answer ¶ 4, ECF No. 8. When Titan fell behind on payments to Medicine Shoppe, Medicine Shoppe sought to collect the money it was owed through arbitration, pursuant to the franchise agreement. Pu. Decl. SJ 7-8, ECF No. 12-1; *see* Pu Decl. SJ 16-18, ECF No. 12-1.

In January 2005, George, Titan, and the Debtors (collectively, "Clients") entered into a retainer agreement with Pu, P.C. to represent them as their counsel in defending against Medicine Shoppe's arbitration action.[3] Pu Decl. SJ 300–02, ECF No. 12-23. George, Titan,

---

[2] References to ECF are to documents filed in this proceeding (Adv. Pro. No. 15-01039-NHL), identified by docket number. References to "SJ" and "SJ Reply" are to page numbers Plaintiff has inserted to identify documents appended to his submissions.

[3] The arbitration proceeding was brought against George and Titan, though all of the Clients were parties to the settlement agreement. Pu Decl. SJ 16, ECF No. 12-1; Pu Decl. SJ 47–53, ECF No. 12-3. In addition to representing the Clients in the Medicine Shoppe arbitration action, Pu, P.C. represented the Debtors in an action brought by Medicine Shoppe against the Debtors in the Eastern District of New York, seeking to recover on the Debtors' guarantee of Titan's debts, and in an action brought by George and Titan, in the Southern District of New York, seeking to stop the arbitration proceeding. Compl. ¶ 8, ECF No. 3; Answer ¶ 8, ECF No. 8.

and each of the Debtors was jointly and severally liable for Pu, P.C.'s legal fees. Pu. Decl. SJ 301, ln. 6, ECF No. 12-23.

Pu, P.C. represented the Clients until July 2006, when they replaced Pu, P.C. with the law firm Alatsas & Taub, P.C. ("A & T"). Pu asserts in the Complaint that he was discharged "without cause." Compl. ¶ 9, ECF No. 3. However, the Clients counter in affidavits that they replaced Pu because of his refusal to follow their instructions to settle with Medicine Shoppe. Pu Decl. SJ 22-24, ECF No. 12-2. In February 2007, the Clients settled with Medicine Shoppe for $570,000. Pu Decl. SJ 47-53, ECF No. 12-3. All four of the Clients were liable for this amount. Pu. Decl., SJ 50 ¶ 1, ECF No. 12-3. In order to pay the settlement, the Debtors took out a $420,000 mortgage loan and a $180,000 home equity line of credit (collectively, the "$600,000 Loan"), both secured by the equity in their home. Pu. Decl. SJ 54-89, ECF No. 12-3–4. After deducting borrowing expenses, the Debtors received $578,525. Pu. Decl. SJ 41, ECF No. 12-2.[4] It is undisputed that they used at least $515,193 of this money to pay Medicine Shoppe. Pu. Decl. SJ 90–91, ECF No. 12-4.

At the time Pu, P.C. was replaced as legal counsel, its claim for legal services totaled over $178,000. Def's. Rule 7056-1 Stmt., Ex. A, ECF No. 18-1. In August 2006, Pu, in his individual capacity, commenced an action in Supreme Court, New York County, seeking to collect the legal fees owed to Pu, P.C. (the "2006 Collection Action"). Pu. Decl. SJ 25–33, ECF No. 12-2. Pu explained that he sued in his individual capacity even though the legal fees were owed to his corporation, Pu, P.C., because he had been suspended from the practice of

---

[4] This document shows that after execution of the agreement the proceeds were to consist of "Cash to Borrower" of $478,525 in addition to $100,000 refinancing; this point is not in dispute.

law, and thus, he was only eligible to appear in court in a *pro se* capacity. Def's. Rule 7056-1 Stmt., Ex. D, ECF No. 18-4; *In re Pu*, 37 A.D.3d 56 (N.Y. App. Div. 1st Dep't 2006).[5]

Pu contends that A&T committed malpractice by failing to make a motion on behalf of the Debtors in the 2006 Collection Action based upon Pu being the improper plaintiff.[6] Def's. Rule 7056-1 Stmt., Ex. D, ECF 18-4. In Pu's view, this motion would have been granted because the proper plaintiff was Pu, P.C. Def's. Rule 7056-1 Stmt., Ex. D, ECF No. 18-4. Furthermore, Pu, P.C., a professional corporation, could not have appeared *pro se* under New Your law, and Pu, as a suspended attorney, could not have acted as its counsel. N.Y. C.P.L.R. § 321(a). Consequently, according to Pu, Pu, P.C. (controlled by Pu) would have been forced to hire an attorney, and because that is something Pu declares he would not have done, the 2006 Collection Action would have been dismissed. Def's. Rule 7056-1 Stmt., Ex. D, ECF No. 18-4; N.Y. C.P.L.R. § 321(a); Tr. Nov. 17, 2015 Hearing 30:9–31:23, ECF No. 22. Pu explained in an email to Debtors' counsel that he believes this malpractice claim is very valuable, because his 2006 Collection Action undoubtedly contributed to the ill health of the now deceased Apostolos Mitsopoulos. Def's. Rule 7056-1 Stmt., Ex. D, ECF No. 18-4 ("It won't be hard to get . . . [an expert witness] . . . to ascribe the Father's stroke and perhaps eventual death to the continuation of my collection action."); Tr. Nov. 17, 2015 Hearing 25:10-17, ECF No. 22 (Pu explaining to the Court why this is a multi-million dollar cause of action).

---

[5] The Appellate Division, First Department, decision suspending Pu is dated December 12, 2006. However, the Appellate Division decision refers to an order of June 1, 2006, issued by the Southern District of New York, whereby Pu was suspended from the practice of law for six months. *In re Pu*, 37 A.D.3d at 57. Whether Pu was already suspended from the practice of law in state court at the time he filed the 2006 Collection Action, or brought the action in his own name in anticipation of being suspended, is not relevant to this decision.
[6] The Debtors have amended their Schedule B to reflect this possibility. Am. Schedule B 3, Case No. 14-45637-NHL, ECF No. 24.

In or around April 2012, the Debtors agreed to a loan modification with Chase, and in November 2014, the Debtors filed their Chapter 7 bankruptcy case in this Court. Aff. in Supp. of Mot. for Summ. J. SJ Reply 60–64, ECF No. 20-3; Case No. 14-45637-NHL.[7]

It is against this backdrop that in March 2015, Pu brought this adversary proceeding seeking to deny the Debtors' discharge, so that he may recover on the 2006 Collection Action (notwithstanding his concession that his pursuit of said claim was improper). Pu posits that once he is successful in denying the Debtors a discharge, the Debtors' malpractice claim against A&T will prove a lucrative source of funds to pay his claim, because he believes his improper pursuit of the 2006 Collection Action clearly contributed to the serious ill health, and perhaps even the death, of Mr. Mitsopoulos.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(J). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Legal Standard

Under Federal Rule of Civil Procedure 56, made applicable to this proceeding by Rule 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must

---

[7] In March 2011, George filed for Bankruptcy in the Eastern District of New York. Case No.11-41911-CEC.  In July 2011, Pu brought an adversary proceeding against George, in which he successfully obtained a judgment denying George a discharge on the basis of § 727(a)(3). *See In re Mitsopoulos*, 487 B.R. 604 (Bankr. E.D.N.Y. 2013).

determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Kulak v. City of New York*, 88 F.3d 63, 70–71 (2d Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251–52 (1986)). In ruling on a motion for summary judgment, the court looks to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," *Celotex*, 477 U.S. at 322, and reviews the evidence in the light most favorable to the non-moving party, with all inferences drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

While the initial burden is on the movant to demonstrate the absence of a genuine dispute of material fact with particular cites to the record, *Celotex*, 477 U.S. at 323; *Marvel*, 310 F.3d at 286, the non-moving party cannot defeat summary judgment by merely casting doubt on some of these facts. *Kulak*, 88 F.3d at 71. The non-moving party must point to disputed facts whose determination would affect the outcome of the case, and show sufficient evidence with respect to these facts, such that a reasonable trier of fact could find in favor of the non-moving party. *Anderson*, 477 U.S. at 247–48; *Matsushita*, 475 U.S. at 586–87.

## Discussion

"One of the central purposes of the Bankruptcy Code and the privilege of discharge is to allow the 'honest but unfortunate debtor' to begin a new life free from debt." *In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006) (citing *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)). In light of this purpose, a denial of discharge is an extremely serious sanction, and therefore, § 727 must be construed strictly against those who object to a debtor's discharge and liberally in favor of the debtor. *In re Cacioli*, 463 F.3d at 234.

A.  <u>Denial of Discharge under § 727(a)(5)</u>

First, Plaintiff seeks summary judgment denying the Debtors a discharge pursuant to § 727(a)(5), based on his assertion that the Debtors are unable to satisfactorily explain the loss of $600,000 of equity in their home.

Section 727(a)(5) provides:

The court shall grant the debtor a discharge, unless—
. . .
(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities . . . .

11 U.S.C. § 727(a)(5). "The purpose of this section is to deter and punish debtors from 'abus[ing] the bankruptcy process by obfuscating the true nature of their affairs, and then refusing to provide a credible explanation.'" *In re Mihalatos*, 527 B.R. 55, 69 (Bankr. E.D.N.Y. 2015) (quoting *In re Gannon,* 173 B.R. 313, 317 (Bankr. S.D.N.Y. 1994)). A plaintiff's initial burden under § 727(a)(5) is to establish that "(1) the debtor at one time possessed or claimed to control substantial and identifiable assets; (2) those assets have disappeared, their disposition or placement now unknown; and (3) no plausible explanation for this deficiency is apparent from the submitted records or has been articulated by the debtor." *In re Mihalatos*, 527 B.R. at 69 (citing cases).

"[T]he proper question the court must ask under Section 727(a)(5) is *what* happened to the assets, not *why* it happened." *In re Silverstein*, 151 B.R. 657, 663 (Bankr. E.D.N.Y. 1993). The purpose of § 727(a)(5) is to deny a discharge to debtors who cannot provide an explanation for what happened to their assets, but "[s]ection 727(a)(5) does not require that the explanation be meritorious." *Id.* Accordingly, "[t]he court need only decide whether the explanation satisfactorily describes what happened to the assets, not whether what happened to the assets was proper." *Id.* (quoting *In re Nye*, 64 B.R. 759, 762 (E.D.N.C. 1986); *In re*

*Maletta*, 159 B.R. 108, 116 (Bankr. D. Conn. 1993); *In re Welch*, No. 096-71550-511, 1998 WL 249175, at *5 (Bankr. E.D.N.Y. Apr. 23, 1998). Plaintiff cites numerous cases, all of which support an understanding of § 727(a)(5) in conformity with this opinion. Mem. of Law in Supp. 17–18, ECF No. 13; *e.g.*, *In re Gardner*, 384 B.R. 654, 669 (Bankr. S.D.N.Y. 2008) ("[Section 727(a)(5)] does not require that the explanation itself be meritorious or that the loss or other disposition of assets be proper; it only requires that the explanation satisfactorily account of [sic] the disposition." (quoting *In re Bodenstein*, 168 B.R. 23, 33 (Bankr. E.D.N.Y. 1994)).

Plaintiff repeatedly refers to a requirement that a debtor defending a claim under § 727(a)(5), demonstrate "good faith and business like conduct." Mem. of Law in Supp. 18–19, ECF No. 13. However, a debtor does not need to make such a showing until after a plaintiff has established the unexplained disappearance of assets. *In re Cohen*, No. 01-11748-PCB, 2007 WL 710199, at *6 (Bankr. S.D.N.Y. Mar. 6, 2007) ("In a Code § 727(a)(5) action, *once the moving party has met the burden of establishing the existence of an unexplained loss or deficiency of assets*, the burden shifts to the debtor to provide a satisfactory explanation." (emphasis added)).

In this case, Plaintiff believes the Debtors have not satisfactorily explained the loss of the equity in their home, because he contests the propriety of the $600,000 Loan from Chase and its use to pay the Debtors' debt to Medicine Shoppe. Compl. ¶¶ 29–31, ECF No. 3. However, as Plaintiff does not contest the disposition of the equity in the Debtors' home, he appears to misapprehend the nature of the inquiry required under § 727(a)(5). Pl.'s Stmt. of Facts 3–5, ECF No. 15.

In support of his motion, Plaintiff references copies of checks totaling $515,193, drawn from the $578,525 in net proceeds that the Debtors received from the $600,000 Loan, paid to Medicine Shoppe under the under the settlement agreement. Pu. Decl., SJ 90-91, ECF 12-4; Pu Decl., SJ 41, ECF 12-2. While the remaining proceeds are not directly accounted for by evidence currently in the record, the Debtors' explanation that this money was used to pay the $570,000 debt they owed Medicine Shoppe warrants the denial of summary judgment. In light of the fact that the vast majority of the $600,000 Loan proceeds has been accounted for, and that in deciding this motion all inferences are to be taken in the Debtors' favor, a credible explanation for what happened to the equity in the Debtors' home has been proffered, such that it is improper to determine as a matter of law that the Debtors should be denied a discharge under § 727(a)(5). Accordingly, Plaintiff's motion for summary judgment on his claim under § 727(a)(5) is denied.

B. <u>Denial of Discharge Under § 727(a)(3)</u>

Plaintiff asserts that the Debtors failed to keep adequate records relating to their Son's pharmacy, the $600,000 Loan from Chase, and a loan modification agreement entered into with Chase in 2012, such that summary judgment should be granted on his claim to deny the Debtors a discharge under § 727(a)(3). Mem. of Law in Supp.25–31, ECF No. 13.

Section 727(a)(3) provides:

> The court shall grant the debtor a discharge, unless—
> . . .
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .

11 U.S.C. § 727(a)(3). To state a prima facie claim under § 727(a)(3), Plaintiff must show: "(1) that the debtor failed to keep or preserve adequate records; and (2) 'that such failure

makes it impossible to ascertain the debtor's financial condition and material business transactions.'" *In re Jacobowitz*, 309 B.R. 429, 436 (S.D.N.Y. 2004) (citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992)); *In re Cacioli*, 463 F.3d at 235 ("The initial burden [under § 727(a)(3)] lies with the creditor to show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained."). Once this has been shown, "the burden falls upon the bankrupt to satisfy the court that his failure to produce them was justified." *In re Cacioli*, 463 F.3d at 23

Ultimately, "[i]t is up to the bankruptcy court's broad discretion to determine on a case by case basis whether the records produced by the debtor are sufficient." *In re Mitsopoulos*, 487 B.R. 604, 611 (Bankr. E.D.N.Y. 2013) (quoting *In re Sethi*, 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000)). Generally speaking, "a discharge should not be denied in a typical consumer bankruptcy case due to a lack of books or records," 6-727 Collier on Bankruptcy ¶ 727.03 (15th ed. 2015), provided that the debtor produces records sufficient to ascertain his true financial condition during the pendency of the case and for a reasonable period prior to the bankruptcy filing. *In re Kran*, 760 F.3d 206, 210 (2d Cir. 2014). To evaluate the sufficiency of the records produced by a debtor, a court looks to:

> 1. Whether the debtor was engaged in business, and if so, the complexity and volume of the business; 2. The amount of the debtor's obligations; 3. Whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; 4. The debtor's education, business experience and sophistication; 5. The customary business practices for record keeping in the debtor's type of business; 6. The degree of accuracy disclosed by the debtor's existing books and records; 7. The extent of any egregious conduct on the debtor's part; and 8. The debtor's courtroom demeanor.

*Sethi*, 250 B.R. at 838 (citing *In re Frommann*, 153 B.R. 113, 117 (Bankr. E.D.N.Y. 1993)). The determination is "particularly fact intensive and must be decided on a case by case basis."

*Ng v. Adler*, 518 B.R. 228, 243 (E.D.N.Y. 2014) (quoting *In re Henderson*, 423 B.R. 598, 616 (Bankr. N.D.N.Y. 2010)).

Plaintiff's application of the *Sethi* factors presupposes that the Debtors were "intimately involved" with running their Son's pharmacy business. Mem. of Law in Supp. 28–31, ECF No. 13. However, no evidence in the record substantiates the Debtors' involvement in the business to any significant extent. While the Debtors' Son, a licensed pharmacist, was in fact denied a discharge under § 727(a)(3) because of his failure to maintain adequate business records from which his financial condition could be evaluated, that does not mandate any particular result in this case. *See Mitsopoulos*, 487 B.R. at 611–15. It is uncontested that the Debtors were guarantors of Titan's debt to Medicine Shoppe, and granted Medicine Shoppe a mortgage on their home to secure a $100,000 loan Medicine Shoppe made to Titan. Compl. ¶ 4, ECF No. 3; Answer ¶ 4, ECF No. 8. However, having guaranteed this debt to help their Son does not make the Debtors principals of Titan as a matter of law, such that they were required to preserve its records to avoid running afoul of § 727(a)(3). Because the Court has not yet ruled on whether these Debtors should be held responsible for the preservation and production of Titan's records, at this juncture in the litigation, a ruling on their adequacy would be premature.

The Debtors provided the bankruptcy trustee with proof of their sources of income, recent bank statements, and two years of tax returns; and they also provided Pu with eighty-six pages related to the $600,000 Loan from Chase and the 2012 loan modification. Pl.'s Stmt. of Facts 11, ECF No. 15; Pu Decl. SJ 179–264, ECF No. 12-8–22; Income Records, Case. No. 14-45637, ECF No. 4; Mem. of Law in Opp'n 7, ECF No. 19. Plaintiff argues that these eighty-six pages of records are patently inadequate, because when Chase was subpoenaed, it

11

was able to produce 1,100 pages of records relating to the same transactions. Pl.'s Stmt. of Facts 11–13, ECF No. 15. He further contends that the Debtors should be charged with the production of records going back to 2007.

Pu is incorrect. Taking inferences in favor of the non-moving party, the Debtors have produced records from which it is possible to reconstruct their financial position during the pendency of this case and for a reasonable time in the past, such that summary judgment is not warranted. For Plaintiff to prevail under § 723(a)(3), he must prove at trial that the Debtors' production is insufficient. Moreover, even if the Court were to determine that the Debtors' documents and financial records are insufficient, § 723(a), affords the Debtors an opportunity at trial to offer a justification under the circumstances.[8] Accordingly, Plaintiff's motion for summary judgment on his claim under § 727(a)(3) is denied.

C. Denial of Discharge Under § 727(a)(4)

Finally, Plaintiff moves for summary judgment on his claim that the Debtors' discharge should be denied pursuant to § 727(a)(4) on the basis of the Debtors' "false oath." Compl. 16, ECF No. 3. Section 727(a)(4) provides, in relevant part: "The court shall grant the debtor a discharge, unless— . . . (4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account . . ." 11 U.S.C. § 727(a)(4)(A). The text of the Bankruptcy Code has been elaborated on by case law such that:

> To prove an objection to discharge under § 727(a)(4)(A), the party objecting to discharge must establish by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case.

---

[8] See section C., *infra*, for a further discussion of the Debtors' circumstances.

*In re Moreo,* 437 B.R. 40, 59 (E.D.N.Y. 2010) (quoting *In re Dubrowsky*, 244 B.R. 560, 572 (E.D.N.Y. 2000)); *see also In re Boyer*, 328 Fed. App'x 711, 715 (2d Cir. 2009); *Bub v. Rockstone Capital, LLC*, 516 B.R. 685, 693–94 (E.D.N.Y. 2014). As expressed by the Fourth Circuit, "the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with the intent to defraud." *In re French*, 499 F.3d 345, 352 (4th Cir. 2007) (quoting *Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 251 (4th Cir. 1987)). Therefore, evaluating a claim under § 727(a)(4) requires not only consideration of what was said, but also the intention of the speaker and the significance of the statements to the case. Consequently, a determination of whether there has been a false oath within the meaning of § 727(a)(4)(A) is a question of fact. *Id.*; *Boyer*, 328 F. App'x at 715 (quoting *In re Keeney*, 227 F.3d 679, 686 (6th Cir. 2000)).

Plaintiff supports his motion for summary judgment on his § 727(a)(4) claim by pointing to what he asserts was false testimony by Ms. Mitsopoulos during her August 12, 2015, Rule 2004 examination;[9] allegedly false statements made at the Debtors' § 341 meeting; and allegedly false statements made in the Debtors' bankruptcy petition.[10]

Plaintiff asserts that during her Rule 2004 examination, Ms. Mitsopoulos testified that she:

> 1. didn't know the chain of events culminating her signing the $420,000 and $180,000 mortgages; 2. had no recollection of the circumstances leading up to the signing of the mortgages; 3. didn't recall what led to the signing of the loan application; 4. didn't know now [sic] she came to owe $180,000; 5. didn't know who gave her the loan applications to sign; 6. had no conversations with anyone regarding borrowing money from JPMorgan Chase. 7. There was never a time when she was not on speaking terms with her son.

---

[9] This allegation is not mentioned in the Complaint, however, it appear to be the centerpiece of Plaintiff's contention regarding denial of discharge under § 727(a)(4). Mem. of Law in Supp. 32–34, ECF No. 13.

[10] In addition, Plaintiff asserts that the Debtors made false statements on their application for the $600,000 Loan in 2007. Mem. of Law in Supp. 9–10, ECF No. 13. This allegation is not mentioned in the Complaint and it does not appear from Plaintiff's submissions that he is alleging that these statements run afoul of § 727(a)(4), because they are not discussed in connection with § 727(a)(4).

Mem. of Law in Supp. 32–34, ECF No. 13 (citations omitted); Pl.'s Stmt. of Facts 13–15, ECF No. 15. Plaintiff explains that he finds these statements incredible, because if they are true, Ms. Mitsopoulos does not remember the events leading up to and causing the loss of her principal asset, the equity in her home. Mem. of Law in Supp. 32–34, ECF No. 13. However, the explanation proffered in the Debtors' opposition brief appears plausible. Namely, they point to the fact that Ms. Mitsopoulos is an unsophisticated, elderly woman, who has virtually no education and limited English comprehension, and she relied on the judgment of her husband and children in managing her financial affairs.[11] Mem. Of Law in Opp'n 11–12, ECF No. 19. Being elderly and poorly educated does not, of course, relieve Ms. Mitsopoulos of the obligation to testify truthfully. However, her age and lack of financial sophistication are significant, because a reasonable trier of fact could conclude that an elderly woman, with an elementary school education, might not be able to recall conversations that allegedly took place nine years ago. *See French*, 499 F.3d 345 (reversing summary judgment because there existed a factual issue regarding whether debtor's false statements resulted from mental impairment). Furthermore, even if, for the sake of argument, these statements were assumed to be untruthful, whether Ms. Mitsopoulos had the fraudulent intent necessary to have her discharge denied under § 727(a)(4)(A) would still be an open question of fact.[12]

To say that the Debtors' explanation appears plausible is not to say it is true. However, to deny a motion for summary judgment, all that is necessary is that a reasonable

---

[11] Ms. Mitsopoulos testified that she was born December 26, 1926, which would make her eighty-nine years old, however, in the same deposition she referred to herself as being eighty-four years old; meanwhile, her lawyer asserted at the hearing on this motion in November 2015 that she was eighty-one years old. Pu Decl. SJ 275:5–6, ECF No. 12-22; Pu Decl. SJ 276: 6; Tr. of Nov. 17, 2015 Hearing 39:4, ECF No. 22.

[12] Plaintiff also contends that Ms. Mitsopoulos made inconsistent statements regarding who was paying the mortgage on her home, and other matters, during her Rule 2004 examination. Mem. of Law in Supp. 33 ECF No. 13. However, a full examination of the transcript of the Rule 2004 examination does not reveal any inconsistencies that merit the granting of summary judgment. Pu Decl. SJ 274–97, ECF No. 12-22–23.

trier of fact could find in the Debtors' favor. The conclusion that there was a false oath within the meaning of § 727(a)(4)(A) is highly contested, and Ms. Mitsopoulos' statements standing on their own are not sufficient to mandate that conclusion. *See In re Varrasso*, 37 F.3d 760, 763 (1st Cir. 1994) (citing *Blanchard v. Peerless Ins. Co.*, 958 F.2d 483, 488 (1st Cir. 1992) ("[S]ummary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record.")).

Plaintiff also avers that Ms. Mitsopoulos perjured herself at her § 341 meeting, on the basis of a brief exchange in which Pu asked "[w]here are you getting the money to pay the mortgage?" and Ms. Mitsopoulos responded "from retirement." Compl. 16, ECF No. 3; Pu Decl. SJ 143:21–22, ECF No. 12-7. This answer does not amount to a false oath within the meaning of § 727(a)(4). It merely establishes that Ms. Mitsopoulos claimed to use retirement money to pay her mortgage, something Pu has not demonstrated to be false.

Lastly, in the Complaint, Pu asserts that there are five false statements in the Debtors' bankruptcy petition, which were each made in order to conceal the "$600,000 conveyance." Compl. 14-15 ¶¶ 27–28, ECF No. 3. In order to dispose of the instant motion, it is sufficient to note that Pu does not establish that these statements are false or that they are an attempt to disguise the "$600,000 conveyance," nor does Pu provide any evidence that establishes that these statements were made "willfully, with the intent to defraud." *French*, 499 F.3d at 352.[13]

---

[13] In paraphrase, the five statements in the Debtors' petition Pu points to are: (1) that no related bankruptcy case exists; (2) that the Debtors' debts are primarily consumer debts; (3) that the debtor has no "other contingent and unliquidated claims" within the meaning of Schedule B, question 21; (4) that the amount of Pu's claim is unknown and (5) that no individual or firm is in possession of the books and records of the Debtors.

With regard to (1), Pu contemplates that George's bankruptcy (Case No.11-41911-CEC ) is a related case. However, Pu does not endeavor to establish that George's case meets the definition of a related case under Local Bankruptcy Rule 1073-2(a). With regard to (3), presumably Pu has in mind the Debtors' potential malpractice claim against A&T. While the Debtors' have amended their Schedule B to reflect this possibility (Case. No. 14-45637-NHL, ECF No. 24), it has certainly not been demonstrated that this is a viable claim, or that it was left off the original Schedule B in a willful attempt to defraud.

Section 727(a)(4)(A) claims require fact-intensive analyses. To the extent that certain facts are undisputed, Plaintiff's interpretation of and inferences from those facts are not dispositive on the record presently before the Court. Consequently, Plaintiff's motion for summary judgment on his § 727(a)(4)(A) claim is denied.

## Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment on his claims to deny the Debtors' discharge pursuant to §727(a)(5), §727(a)(3), and §727(a)(4)(A) is denied. A separate order will issue.



**Dated: March 30, 2016**
**Brooklyn, New York**

**Nancy Hershey Lord**
**United States Bankruptcy Judge**